## ELFER v. HIBERNIA NAT. BANK IN NEW ORLEANS et al.

### No. 16670.

Court of Appeal of Louisiana. Orleans.

May 17, 1937.

Henry P. Viering, of New Orleans, for appellant.

McCloskey & Benedict, and Jas. H. Kepper, Jr., all of New Orleans, for appellees.

JANVIER, Judge.

Numa C. Elfer, claiming to have sustained injuries to his head on May 8, 1935, when he walked into a barber shop display "pole" which extended over the sidewalk from the side of a building on Baronne street and alleging that the said "pole" was lower than is permitted by law, prays for solidary judgment against Nick Gentile, the proprietor of the barber shop in front of which the pole was displayed, Mrs. Frances R. Johnson Stallings, the owner of the building in which the barber shop was being conducted, and Hibernia National Bank in New Orleans, the agent of Mrs. Stallings.

Plaintiff charges that the pole, at its lowest point, was less than 6 feet above the sidewalk and, thus, was a violation of City Ordinance No. 9357, C.C.S., which, in section 47, provides that such extensions must be not less than 9 feet above the sidewalk.

Defendants deny that there was any negligence on the part of any of them and in the alternative allege that the sign, in full view of all persons, was most conspicuous by reason of its color and because of the fact that the cylinder inside it, striped with contrasting colors, was constantly revolving, and that, therefore, plaintiff was himself negligent in walking into it. They especially deny that plaintiff sustained any appreciable damage.

In the court a qua there was judgment for defendants. Plaintiff has appealed.

■ It is conceded that the ordinance referred to requires that any sign or other object extending over the sidewalk be at least 9 feet high at its lowest point. As the bottom of the pole was shown to have been less than 6 feet above the sidewalk, to that extent there was negligence, since it is negligence per se to violate an ordinance enacted in the interest of the safety of citizens. Obviously, the purpose of that particular enactment was to prevent just such things as plaintiff alleges occurred in this instance.

■ But the fact that there is negligence does not in itself create legal liability. First and foremost it must be shown that damage has been sustained and also it must appear that the negligence pointed to was the cause of the said damage. The technical violation of a law is not the proximate cause of injury where, but for the contributory negligence of the injured person, there would have been no damage. Therefore, it would have been necessary for us to give consideration to the surrounding facts and circumstances to determine whether plaintiff, in walking into the object, was guilty of contributory negligence, were it not for the fact that the record shows conclusively that no real damage was sustained.

■ The damage to plaintiff's hat, for which he claims $1, may be entirely disregarded. He does not set forth, at any place in his testimony, the value of the hat, nor its condition, nor the extent of the damage thereto. Mr. DeGruy, one of the witnesses for defendant, testifies that it was a "very old hat." We also find in

the record evidence to the effect that it seemed to be about "three years old" and also that it sustained only a very little dent in front. ("De minimis non curat lex.") Although this maxim has been held to be inapplicable wherever there is an actual invasion—however small—of another's rights (Corpus Juris, Vol. 18, p. 481) we think that here it has application.

 It is charged in the petition that plaintiff "sustained a severe blow on the forehead which produced a red circumscribed area about two inches in area in the frontal center, and a severe pain in the head which lasted about six days." Plaintiff testified that he sustained a "stunning, staggering blow on the forehead." Plaintiff and his counsel seem to have had a misunderstanding concerning whether his injury consisted of a bruise or a "hickey." Plaintiff, after objecting to the use of the word "hickey" on the ground that "there is no such word," stated that, "I objected to the word 'hickey'. Hickey means bump." His counsel, however, seemed to feel that he had sustained a "hickey."

We, however, are well convinced that he sustained neither a "hickey," nor a bruise, nor any other injury.

As soon as he walked into the pole, he turned and entered the barber shop to complain to the barber (Gentile) who advised him that the Hibernia National Bank was acting as agent for the owner of the building. Immediately he called at the bank and complained to Mr. DeGruy, whose department had supervision of the building in question. Mr. Gentile and Mr. DeGruy state positively that at that time there was not the slightest evidence of physical injury. They both say that they examined his head only a few minutes after the alleged occurrence.

Plaintiff maintains that he did not call on Mr. DeGruy on the day of the accident and that, in fact, he did not see him until many days later, and, as proof of this, he states that he did not even know who was the owner of the building, or who was the agent for the owner, until he visited the "assessor's office" several days afterwards. In one part of his testimony he says that "it must have been several weeks, maybe a month after." At another part of his testimony he states that "it may have been several days, a week or two after." But Mr. Gentile testified that, as soon as plaintiff entered the barber shop,

he referred him to the Hibernia Bank, which was around the corner, and that he left to visit the bank and make his complaint there and that later on that day a young man from the bank called to discuss the accident with him. This could only have resulted from plaintiff's visit at the bank a few minutes before. Mr. DeGruy said that plaintiff visited him "a few moments after the supposed accident occurred." That he himself did not feel that he had been injured is evidenced by the fact, as testified to by both himself and Mr. DeGruy, that all he wanted was a new hat and that the pole should be raised.

The failure to call a doctor is, in itself, evidence of the fact that the injury, if any, must have been very slight.

The Latin maxim already quoted is equally applicable here. The commonly accepted translation is "the law cares not for small things." London, etc., Mortgage Company v. Gibson, 77 Minn. 394, 80 N.W. 205, 207, 777.

It is ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.

WESTERFIELD, J., absent, takes no part.