MILLER, Judge.
Plaintiffs’ westbound parked pickup truck was blocking about half the westbound lane of a blacktop country road. The overtaking westbound motorist was insured by Travelers Insurance Company. Their insured failed to see the pickup truck in time and rearended it at high speed. The trial court awarded damages to the pickup truck driver and his guest passenger wife, finding that the negligence of the overtaking motorist was the sole legal cause of the accident. We find that the pickup truck driver’s negligence in blocking a part of the road was a legal cause of the accident, but that the overtaking motorist had the last clear chance to avoid the accident. We affirm in part and reverse in part.
Travelers does not seriously urge that their insured was free from negligence, but they do contend that the pickup truck driver was contributorily negligent in violating LSA-R.S. 32:141 (A). Additionally, Travelers filed a third party demand against the pickup truck driver and his insurer, State Farm Mutual Automobile Insurance Company, seeking one-half of any award made to the guest passenger.
At about noon on the clear dry day of November 22, 1968, plaintiff Marshall Laird was driving his 1968 Dodge pickup truck west on Louisiana Highway 112. The road is blacktopped to a width of twenty feet and has narrow shoulders. The area where this accident occurred was described as “hilly” “like a roller coaster.” When Laird reached a point about ten miles east of De-Ridder, he saw three large highway signs on the shoulders of the road stating “ROADWORK AHEAD” and “MEN WORKING”. These signs were about three feet wide by four feet tall and each had a red flag on top. These signs were posted just east of the crest of a slight hill. At least 600 feet (the trial court found the distance to be 900 feet) to the west of the crest of this hill, a Louisiana Highway Department crew was installing some baffles or headers in the north ditch beside the highway.
*75 Laird stopped to get directions from the work crew and then spent about five minutes visiting with the foreman of the crew. He turned off the motor of his pickup truck, but left his foot on the brake so that his brake lights were on. There is a substantial dispute as to how much of the pickup truck was on the blacktop. We find no manifest error in the trial court’s conclusion that the pickup truck was half on the blacktop and half on the shoulder. The shoulder was not wide enough to park any farther to the right. However, Laird could have parked on a gravel parish road located within forty feet of his parked position.
When Laird stopped, the foreman walked in a southerly direction from the north ditch to shake hands with Laird and they conversed. While in this position, one car approached from the west and one from the east. Neither had any difficulty in passing. The foreman was watching for traffic and heard defendant’s insured International Van Truck (which was pulling a U-Haul trailer) approaching from the east. The foreman watched the fast approaching truck and detected that it was not changing direction or speed. He moved to the south shoulder while at the same time hollering and waving his hands .in a vain attempt to attract the attention of the Van Truck driver. The driver did not react until just before impact at which time the brakes were applied and he turned slightly to his left.
The impact knocked the pickup truck a distance of 150 feet across a ditch and into the woods. The empty Van Truck continued on for a distance of 74 feet after impact. The empty trailer traveled in and along the south ditch and came to rest some distance beyond the resting place of the Van Truck.
The Van Truck driver testified that he was driving 55 mph. He pled guilty to speeding 65 mph. He was late for a noon appointment in DeRidder. He failed to see the highway signs at the crest of the hill. At that time he was looking in his rear view mirror to see if his co-employee’s following Van Truck was still in sight. He admitted that he could have been looking in the mirror for as long as three seconds. On direct examination at Tr. 258, he was asked:
“Q. Do you think if you hadn’t looked back, there would have been an accident ?
A. There’s a possibility that there might not have been. I’m reasonably sure that there might not have been.
Q. You’re reasonably sure ?
A. Yes, sir. I might have seen the truck in time to stop.”
Had this driver seen what he should have seen, he would have had time to move to his left and pass the parked pickup truck with ease.
The Van Truck driver admitted that there was no oncoming traffic and that it was a clear day with good visibility. His negligence in failing to see the white pickup truck with it’s brakelight on a clear distance of at least 600 feet was gross negligence. His failure to see the Highway Department warning signs posted near the crest of the hill (some 750 to 900 feet away) and his failure to see the foreman waiving his hands as he moved from the center of the road to the south shoulder further compound his negligence. All are legal causes of this accident.
The trial court committed manifest error in holding that Laird was free from negligence. He violated LSA-R.S. 32:141 (A) which provides:
“Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway *76 opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway.”
Laird’s violation of this statute was a substantial factor contributing to this accident, and his negligence was a legal cause of the accident. Dixie Drive it Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962) ; Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1971).
Laird’s negligence does not bar his recovery because the overtaking Van Truck driver had the last clear chance to avoid this accident. Under this doctrine a defendant motorist is liable for injury to a plaintiff, despite contributory negligence on the latter’s part, if an accident occurs when (1) the plaintiff was previously in a position of peril, of which he was either apparently unaware or else from which he could not extricate himself, (2) the defendant discovered, or could reasonably have observed, the plaintiff’s danger and (3), thereafter, could have reasonably avoided the accident. Price v. Watts, 215 So.2d 187, 189 (La.App.3d Cir. 1968).
Laird was in no danger until it became apparent that the overtaking Van Truck driver did not see the stopped pickup truck. At that time, it was impossible for Laird to extricate himself from his position. The overtaking motorist had ample time to observe the danger and thereafter could have easily avoided the accident. Assuming .that he was driving at his stated speed of 55 mph, he was traveling 81 feet per second. He should have seen the warning signs at least twelve seconds before impact. He should have seen the pickup truck and the foreman standing in the road at least nine seconds before impact. He should have seen the foreman waiving his hands as he moved to the south shoulder of the road at least four seconds before impact. At four seconds before impact, he could have eased into the passing lane. His failure to see what he should have seen constituted a dereliction of the first duty of a motorist to keep a sharp lookout ahead to discover the presence of those who might be endangered by the vehicle’s advance. Jackson v. Cook, 189 La. 860, 181 So. 195 (1938).
The overtaking motorist had the last clear chance to avoid this accident. Mr. Laird is therefore entitled to recover for his injuries. His negligence however makes him and his insurer, State Farm, responsible for one-half the damages sustained by his guest passenger.
Travelers contends that the $30,000 award to Marshall Laird and the $10,000 award to Mrs. Gracie Laird are grossly excessive.
We acknowledge that we are not to disturb the trial court’s award of general damages for personal injuries in the absence of abuse of the trial court’s great discretion, and that each personal injury must be evaluated according to its own peculiar facts and circumstances. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Prior awards for seemingly similar injuries are relevant only insofar as they may indicate that the present award is so greatly out of proportion with past awards as to indicate a possible abuse of the trial court’s large discretion.
The award of $30,000 to Mr. Marshall Laird is manifestly excessive. The award of $10,000 to Mrs. Gracie Laird, while high, is not manifestly excessive.
When the accident occurred, Mr. Laird was 70 years of age and Mrs. Laird was 68. Mr. Laird was unconscious and/or unable to communicate for five or six days after the accident. He sustained fractures of the 6th, 7th, 8th and 9th ribs posterially laterally on the right side, sprains of both ankles and marked tenderness over his liver and spleen. He had a difficult time during his 24 day confinement in the hospital. He developed pneumonia and was disoriented and hallucinated for some time. *77 After he was discharged from the hospital he remained a bed patient for about two months. It was a real problem for his physician to get him to walk again. Tr. 133, 147. Laird lost weight during his bed confinement and it was a year after the accident before he started to gain weight. Tr. 120.
At trial, Mr. Laird was still having chest pain, tenderness over the liver and spleen, and difficulty with his memory. He would repeat himself frequently in conversations. Tr. 120,1. At trial, he was still receiving injections every two to four weeks for arthritis. Tr. 136,7.
Mr. Laird had retired from his country store business prior to the accident, but still bought and sold cattle and cared for his cattle. He was a most active sportsman, particularly as a deer hunter. Since the accident, he has been unable to tend to his cattle and his usual chores. He has been unable to walk well enough to enjoy a deer hunt.
Appellant points to the fact that some of Mr. Laird’s complaints might be due to arteriosclerosis; that his physician did not refer him to a psychologist, psychiatrist or neurosurgeon; that he responded to treatment; and contends that it was not established that he was now a semi-invalid.
It was established that Mr. Laird minimized his complaints and that he cheerfully tried to cooperate. Prior to the accident, his family physician characterized him as “witty, jovial, precise, very sharp, very alert.” Since the accident, he found him totally different and unable to follow instructions. He concluded that the accident contributed to Mr. Laird’s difficulties. Tr. 141.
The trial court concluded that the injuries suffered by Mr. Laird in this serious accident “robbed Mr. Laird of the active, happy remaining years of his life * * While this might be correct, the medical evidence does not entirely support the finding that all of Mr. Laird’s difficulties are related to this accident.
Respecting the trial court’s finding that Mr. Laird is entitled to a liberal award, we find that an award of $20,000 for the pain, suffering and disability is proper.
Mrs. Gracie Laird’s injuries were not as severe. She was unconscious for some time but was able to communicate while in the hospital emergency room. She had multiple contusions and bruises of the face, head, neck, back and legs. It first looked like she was the most seriously injured. X-rays showed a fracture of the 7th, 8th and 9th ribs, and a T-9 fracture which might have come from the accident. (Dr. Lowrey’s deposition page 17.) It was not established that it did. Her preexisting arthritis was aggravated by the injuries received in the accident. She was confined to the hospital for 24 days, but responded to treatment much sooner than her husband.
Her family physician testified that she would continue to have back pain for the rest of her life. Since the accident, she has lost a substantial amount of hair. While it was not established that this was related to the accident, medications or a psychological reaction can cause it. (Dr. Lowrey’s deposition, page 19.)
Fifteen months post accident, she still suffered pain in her left side. The aggravation of her arthritic condition was expected to worsen rather than improve. Tr. 162. The doctors found that she too minimized her complaints.
The trial judge was impressed with the serious consequences of her injuries. The award is high but not manifestly excessive.
The judgment against Travelers Insurance Company is amended to reduce the award to Marshall Laird for pain, suffering and disability, from $30,000.00 to $20,-000.00. Otherwise the judgment against Travelers Insurance Company is affirmed (except as to court costs).
*78 The judgment dismissing Travelers’ third party demand against Marshall Laird and his insurer, State Farm Mutual Insurance Company, for one-half the award in favor of Mrs. Gracie Laird, is reversed. There is now judgment in favor of Travelers Insurance Company and against Marshall Laird and State Farm Mutual Automobile Insurance Company, for Five Thousand and No/100 ($5,000.00) Dollars, together with legal interest from demand on that sum. One-half of the costs of court both in the trial court and on appeal are taxed to Marshall Laird and ' State Farm Mutual Automobile Insurance Company. The other half are taxed to Travelers Insurance Company.
Amended and affirmed in part.
In part reversed and rendered.