521 So.2d 832 (1988)
Barbara Ann HARKNESS, Appellee,
v.
W.K. PORTER d/b/a W.K. Porter and Sons House Moving, Appellant.
No. 19411-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Writ Denied April 29, 1988.
*833 Shotwell, Brown & Sperry by Francis C. Broussard, Monroe, for appellee.
Travis M. Holley, Bastrop, for appellant.
Before HALL, C.J., and JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
The plaintiff Barbara Ann Harkness sued the defendants C.W. Porter and W.K. Porter alleging they wrongfully removed limbs from plaintiff's pecan trees. The trial court awarded damages in the amount of $117.36 for the value of the wood taken and $1,250.00 for mental anguish and trespass to the plaintiff. The defendants appeal the judgment and the plaintiff has answered, contending the trial court erred in denying treble damages and attorney's fees under LSA-R.S. 56:1478.1 (now LSA-R.S. 3:4278.1). We affirm.

FACTS
Barbara Ann Harkness, the plaintiff, is the owner of approximately 70 acres of land in Morehouse Parish, Louisiana. The land was originally owned by plaintiff's grandfather, and she inherited the acreage from her father who died in January of 1984.
Plaintiff's grandfather planted pecan trees on the land sixty years ago around the family home. Plaintiff's father, *834 Vaughn Harkness, meticulously cared for the pecan trees during his lifetime and harvested and sold the pecans during the season.
In August of 1984, the defendants contracted to move a house and proceeded to accomplish this task by moving the house down Ollie Grove Road which borders plaintiff's land in Morehouse Parish. Finding the overhanging limbs of six pecan trees which bordered the road to be an obstacle to the house moving project, the defendants hired a tree service to remove the limbs. The limbs were cut in August of 1984.
The plaintiff, who was not contacted before the limbs were removed, brought suit to recover damages for trespass, mental anguish, the value of the wood taken, and treble damages and attorney's fees under the timber statute, LSA-R.S. 56:1478.1, now redesignated as LSA-R.S. 3:4278.1. The trial judge awarded a total of $1,367.36 in damages but denied plaintiff treble damages and attorney's fees under the timber statute. The defendants appeal and the plaintiff has answered, raising the following five issues for our review:
(1) Did the trial court err in concluding the trees were not on a public right of way;
(2) Did the trial court err in concluding the tree limbs were not a public nuisance;
(3) Did the trial court err in awarding the plaintiff $117.36 for the value of the wood taken;
(4) Did the trial court err in awarding the plaintiff $1,250.00 for her mental anguish; and
(5) Did the trial court err in finding the timber statute LSA-R.S. 3:4278.1 to be inapplicable to the case.

Right of Way
The defendants argue the pecan trees are located on a state right of way under LSA-R.S. 48:220.1. The statute provides where the state has maintained the road for a period in excess of three years the right of way shall extend one and one-half feet beyond the rear or outside slope of the ditch.[1]
The record reveals the trees were not on a right of way acquired by the state by virtue of long-term use and maintenance. No evidence was introduced of a dedication to or expropriation by the state or any other public body of a right of way on Ollie Grove Road. Mr. Frank Messinger, a qualified expert surveyor, testified his investigation revealed neither the state nor Morehouse Parish had a dedicated right of way on the disputed area.
Having concluded the state had no right of way, the trial court next reviewed the evidence to determine whether the parish could have acquired the right of way by virtue of long-term use and maintenance under LSA-R.S. 48:491(B). In his written reasons for judgment the trial judge stated:
The evidence is clear that the Police Jury of Morehouse Parish, Louisiana, has acquired a right of way of the Ollie Grove Road itself by tacit dedication. Mr. Mason testified that probably back in the early 1930's, the Morehouse Parish *835 Police Jury graveled the road and in the 1950's they blacktopped the same. The evidence is very convincing that the Police Jury of Morehouse Parish since that time has performed a regular maintenance of the road in question. It has been used as a public road for many years. Therefore, the Court finds that the Ollie Grove Road has become tacitly dedicated to the public.
The width of the right of way for tacitly dedicated roads is limited to the area actually maintained by the parish. See Michael v. State, Department of Highways, 129 So.2d 587 (La.App. 2d Cir.1961). The evidence of parish maintenance in the area of the trees was limited to the maintenance of the paved portion of the road which was twenty feet wide. The evidence established that plaintiff's father had mowed his front yard to the edge of the black top and there was no ditch along this part of the road. The trial court found the provisions of LSA-R.S. 48:495 to be applicable. The statute provides, in part:
"All roads laid out in accordance with this sub-part and all necessary bridges shall be at least twenty-five feet wide..."
The trial judge correctly interpreted this statute to require tacitly dedicated roads to be at least twenty-five feet wide. See Smith v. Mahfouz, 489 So.2d 409 (La. App. 3d Cir.1986), writ den., 494 So.2d 1181 (La.1986); Manzanares v. Meche, 506 So.2d 957 (La.App. 3d Cir.1987), writ den., 508 So.2d 822 (La.1987). The trial judge further relied upon the testimony of Frank Messinger whose survey of the disputed area was introduced at trial. The survey established the width of the paved surface of the road to be twenty feet and the distance from the center line of the road to the six pecan trees to vary between twenty-three and twenty-five feet. The closest tree lies ten and one-half feet beyond the outside limit of the twenty-five foot right of way. The trial judge correctly concluded the pecan trees were not located on the parish right of way and they belonged to the plaintiff as owner of the land on which they were located. Evaluations of credibility and findings of fact should not be disturbed on appeal absent manifest error. We find no error in the trial court's conclusion on this issue.

Public Nuisance
The defendant contends the overhanging limbs constituted a public nuisance and could justifiably be removed by users of the right of way.
The trial judge found no evidence in the record that the pecan trees were a public nuisance or that they posed imminent danger to the users of the road and we agree. Indeed, the record reveals combines, cotton pickers fifteen feet in height, rice farming equipment and 18-wheelers traversed the road without difficulty. We conclude, as did the trial judge, the cutting of the trees constitutes a trespass for which damages are recoverable. Adams v. State Dept. of Highways, 357 So.2d 1239 (La.App. 2d Cir.1978).

Value of the Wood Taken
The trial judge relied upon the testimony of Merlin Smith, expert forester, who testified .978 cords of wood were taken from the six pecan trees. Although the defendant contends the testimony of the witnesses was contradictory as to the value of the wood, we find no error in the trial judge's acceptance of Mr. Smith's valuation of $120.00 per cord as firewood and further conclude the award of $117.36 properly represents the value of the pecan tree limbs.

Damages for Mental Anguish
The defendant argues in order for the plaintiff to recover damages for the mental anguish she sustained the plaintiff must prove the trespass was aggravated by circumstances of gross recklessness and deliberate disregard of the victim's rights and cites Adams v. State Dept. of Highways, supra, in support. This is an incorrect application of our holding in that case, wherein we stated:
It is in those cases where the trespass is aggravated by circumstances of gross recklessness and deliberate disregard of *836 the victim's right that it is said that mental anguish is reasonably calculated or expected to result to the victim. See Turner v. Southern Excavation, Inc., 322 So.2d 326 (La.App. 2d Cir.1975). In other cases, where the trespass is not aggravated by such circumstances, the burden of proving actual mental anguish damages, of course, is much greater because of the absence of reasonably expected mental anguish. But where the burden is met and actual damages are provedeven though not reasonably expectedthe victim should be allowed the damages.
The state of mind or moral culpability of the trespasser affects the burden imposed on the trespass victim claiming mental anguish and not the victim's right to claim the damages.
As in Adams, the record reflects no malice on the part of the defendant in cutting the tree limbs, but only an error of judgment that the trees were on the right of way. The trial judge found the plaintiff entitled to an award for mental anguish, noting plaintiff's testimony that her grandfather had planted the trees sixty years ago and her father meticulously cared for the pecan trees and sold some of the pecans produced. The trial judge further noted the plaintiff's father passed away only eight months before the limbs were cut adding, "This caused `particular' mental anguish to the plaintiff who obviously attached significance to the trees because of her father's feelings and care for them."
We conclude the record supports the trial court's determination the plaintiff sustained mental anguish because the pecan tree limbs were cut down. The award of $1,250.00 for plaintiff's mental anguish is not an abuse of the trial court's discretion. Reck v. Stevens, 373 So.2d 498 (La. 1979).

Treble Damages Under the Timber Statute
The plaintiff answered the defendant's appeal seeking treble damages and attorney's fees under the timber statute, LSA-R.S. 56:1478.1, now redesignated as LSA-R.S. 3:4278.1, which provides, in part:
§ 4278.1. Trees, cutting without consent; penalty
A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed, plus reasonable attorney's fees.
The plaintiff contends that because a neighbor, Samuel Mason, related to the defendant that the trees were owned by Ms. Harkness prior to the cutting the defendant's acts constituted a wilful and intentional violation of the statute. Findings of fact are within the domain of the trial judge and will not be disturbed on appeal absent a finding of manifest error. The trial judge stated on this issue:
"There was no malice in the cutting of the tree limbs, but only an error of judgment that the trees were on a public right of way. Defendants hired a tree service to perform the cutting of the limbs and all indications are that this job was performed in a good, workmanlike manner."
Finding no flagrant disregard of Ms. Harkness' property rights, the trial judge concluded the statute to be inapplicable and finding insufficient evidence to the contrary contained in the record we conclude the trial judge's determintion to be correct.
For the reasons expressed above, we AFFIRM the judgment of the trial court.
AFFIRMED.
NOTES
[1] In its entirety, LSA-R.S. 48:220.1 reads as follows:

§ 220.1. Width of right of way acquired informally
Whenever the Department of Highways, under its statutory authority takes over an existing road from a parish or municipality, unless there is an agreement between the two agencies to the contrary, the department shall acquire all of the rights which the ceding agency possessed with regard to the ceded road or street. In those instances where the highway was constructed by the parish or municipality without a recorded conveyance or dedication of the right of way by the landowner, and in those instances where the department has constructed a highway without a recorded conveyance or dedication by the landowner, the width of the right of way servitude for the said highway shall include the roadway, shoulder, roadside ditch and an area extending one and one-half feet beyond the rear or outside slope of the roadside ditch. Nothing herein shall affect title to any buildings or fences, nor require their removal without payment of just compensation therefor, nor shall anything herein affect title to the soil beneath the highway right of way nor to any minerals thereunder. The existence of the highway for a period in excess of three years shall vest title to the right of way servitude in the Department of Highways.